## 66603. JOHNSON v. BIALACH.

DEEN, Presiding Judge.

The appellee, Effie F. Bialach, as administratrix of the estate of Nicholas J. Bialach, deceased, filed a petition for a determination of heirs. The appellant, Sally Irene Bialach Johnson, answered alleging that she was the daughter of the deceased. The issue was tried before a jury.

Effie Bialach testified that she had married Nicholas J. Bialach on September 11, 1979, although she had known him in Detroit, Michigan since 1958. Her husband told her he had been married previously to a woman named Carol Ann, but never mentioned that he had a child. When he was dying of cancer her husband requested that his body be donated to medical science. The Bialachs were then living on a farm in Turner County, Georgia, and forms were filled out at Mr. Bialach's direction donating his body to Emory University. Mrs. Bialach notified Nicholas' brother, Theodore (Ted) Bialach, whom she had met while they were living in Detroit, of Nicholas'

death and the disposal of his body. At that time Ted told her that Nicholas had been married to a woman named Irene and had a daughter named Sally Irene. Two neighbors of the Bialachs in Turner County testified that Nicholas had told them that he had never had any children and never wanted any children.

The appellant, Sally Irene Bialach Johnson, testified that she was born on May 6, 1932, the daughter of Irene and Marion John Bialach. She never knew her father and her mother told her that he had deserted them, changed his name to Nicholas J. Bialach in order to avoid paying child support, and married another woman. Her father never supported her and they never made any contact with each other after he left.

Mrs. Irene Mylinski Bialach's testimony was that she married Marion Bialach when she was nineteen years old and they had one child, the appellant Sally Irene. During the "Great Depression" Marion had no job and refused to work for the WPA, so he went home to his parents and she took Sally to live with her at her mother's house, but they were not divorced because of their Roman Catholic faith and beliefs. In 1936 Ted Bialach told her that Marion had changed his name to Nicholas and entered into a bigamous marriage with a woman named Ann. Irene Bialach divorced Nicholas in 1937, and maintained friendly relations with his mother and brother Ted, but never had any further contact with her former husband.

Both Irene Bialach and Ted Bialach testified that there were five sons in the Bialach family, of whom Ted was the sole survivor; that Marion/Nicholas and his parents were born in Poland; that he never liked the name "Marion" because it was a girl's name and preferred two nicknames, "Jack" and "Whitey," which was the English translation of Bialach. Irene Bialach stated that when she learned of Nicholas' death she wrote for a copy of the death certificate and insisted that Sally contact the Probate Court in Turner County to make known the fact that she was Nicholas' daughter, because she felt Nicholas owed Sally something as his child.

Ted Bialach testified that he was six years younger than Marion/Nicholas and remembered that in 1936 he visited Irene Bialach in the hospital and told her that Marion had changed his name to Nicholas and married a woman named Ann. He said that because he and his entire family were Catholic this caused a great deal of hard feelings and problems within the family. He recalled that Marion was often teased by being called "Mary Ann," and the name was sometimes so misspelled on paperwork. Marion informed him in 1936 that he had changed his name to "Nicholas J." and told him to "call me Nick," but he did not know if the name was legally changed. From then on Ted and the other members of the family referred to

Marion as Nicholas.

Ted Bialach also stated that in the early years he frequently visited Irene and Sally Bialach as they lived in the Detroit area, but lost contact with them after 1958, when they attended the funeral of his brother Frank. He only met Ann Bialach once and first met Effie in 1979, when Nicholas introduced her as his girl friend. He visited Nicholas in Turner County three times after he and Effie moved there from Detroit. During his last illness his brother asked him if he ever saw the Mylinski family, referring to Irene and Sally. Ted had not seen Irene or Sally since 1958 until 1982, when he notified Irene of Nicholas' death. Ted testified that Nicholas told him he wished his body to be buried at St. Mary's Catholic Church in Detroit and that he (Ted) became very upset when he learned Effie was having the body sent to Emory University for medical research and thereafter cremated, as this was against the religious beliefs of their family.

The trial court directed a verdict in favor of Effie Bialach as being the surviving widow and the duly appointed, qualified and acting administratrix of the estate of Nicholas J. Bialach, and presented to the jury the question of whether Sally Johnson was the daughter of Nicholas Bialach and thus entitled to a child's part of his estate. The jury found in favor of the plaintiff, Effie Bialach, and this appeal ensued from the denial of appellant's motion for new trial.

1. The appellant contends that the appellee's requested charge in regard to the right of the wife to dispose of her husband's dead body, which was given over her objection, was inapplicable, tended to confuse and mislead the jury, and was grossly prejudicial. However, our review of the trial transcript discloses that when Effie Bialach first testified on direct examination that Nicholas told her he wanted to donate his body to medical science, no objection was made by appellant to this evidence. Indeed, Mrs. Bialach was allowed to discuss the matter at length and was thereafter cross-examined extensively on the subject. Moreover, it was appellant who tendered in evidence the certificate bequeathing the body to Emory University, along with a letter to Ted Bialach from Emory University expressing appreciation for the donation. Since the appellant sought to attack the character of Effie Bialach by showing that this disposition of her husband's body was strenuously opposed by Ted and other members of his family, as well as antagonistic to their religious doctrines, the charge was pertinent and adjusted to the evidence. See *L. & N. R. Co. v. Wilson,* 123 Ga. 62 (1) (51 SE 24) (1905). " 'It is not error to give an instruction where there is any evidence, however slight, on which to predicate it. [Cit.]' [Cit.]" *Butler v. Anderson,* 163 Ga. App. 547, 548 (3) (295 SE2d 216) (1982).

2. Nor did the court err in allowing two neighbors of Nicholas

Bialach to testify as to conversations they had with the deceased. "Where the paternity of a child is the issue involved, the declarations of the reputed father, since deceased, are admissible in evidence, under [present OCGA § 24-3-12 (Code Ann. § 38-303)], which provides: 'Pedigree, including descent, relationship, birth, marriage, and death, may be proved either by the declarations of deceased persons related by blood or marriage, or by general repute in the family, or by genealogies, inscriptions, "family trees," and similar evidence.' The weight to be given the declarations is a matter for the jury." *Estill v. Estill,* 149 Ga. 384, 385 (2) (100 SE 365) (1919). See also *Hines v. Donaldson,* 193 Ga. 783 (2) (20 SE2d 134) (1942). It is evident here that the jury found these declarations made by Nicholas to two casual acquaintances more credible than the contrary direct testimony of his brother and purported former wife and daughter, which is their prerogative.

3. It follows that the verdict was not contrary to law and the evidence was sufficient to support it. See *Hines v. Donaldson,* 193 Ga. 783 (4), supra.

*Judgment affirmed. Banke and Carley, JJ., concur.*

DECIDED SEPTEMBER 7, 1983.

*Cheryle T. Bryan,* for appellant.
*John R. Rogers,* for appellee.